IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHARETOWN, INC.,<br><br>　　　　Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>PHILIP HALL,<br><br>　　　　Defendant/Counterclaim Plaintiff. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:21-cv-00742-TC-CMR<br><br>District Judge Tena Campbell<br>Magistrate Judge Cecilia M. Romero |

In this breach-of-contract action, Plaintiff Sharetown, Inc. alleges that Defendant Philip Hall, one of its founders and former executives, misappropriated Sharetown's trade secrets by disclosing them to a competitor for whom Mr. Hall was also working. Mr. Hall answered the complaint and filed a counterclaim, (ECF No. 5), but he also moved to dismiss one of the three causes of action under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6.) For the following reasons, the court DENIES the motion to dismiss.

**BACKGROUND**[1]

Mr. Hall, Cody Hunter, and a third individual founded Sharetown in 2012. Mr. Hall, a vice president, signed a Proprietary Information and Inventions Agreement that prevented him from, among other things, disclosing or using proprietary or confidential information like trade secrets. In 2016, Sharetown adopted its current business model: providing reverse logistics services to brand retailers and selling and reselling mattresses and furniture to end users. Part of this new business model, which Sharetown claims was "innovative and novel to the market," was

---

[1] All factual allegations come from Sharetown's complaint. (ECF No. 2.) The court accepts them as true for purposes of this order. See Albers v. Bd. of Cnty. Comm'rs, 771 F.3d 697, 700 (10th Cir. 2014).

Sharetown's "proprietary approach" to its services. (Compl. ¶ 11, ECF No. 2.) Unfortunately, when Sharetown changed its business model, it lost revenue. Because the company could not afford to pay Mr. Hall and Mr. Hunter, they had to get second jobs at another company.

Sharetown's financial setback was only temporary. In mid-2018, it was able to bring Mr. Hall and Mr. Hunter back on as full-time employees. Mr. Hall retained his title of vice president, and he became responsible for finding, training, and overseeing the independent contractor sales representatives who provided reverse logistics services and sold mattresses for Sharetown. In this role, Mr. Hall had access to a list of hundreds of sales representatives' names and contact information. He was later tasked with developing new sales channels through which Sharetown could sell mattresses and other furniture.

In mid-2021, a former Sharetown representative named David Nish started Twinkle Beds, another company that sells mattresses. Twinkle Beds is a Sharetown competitor. Sharetown learned that Mr. Hall was working with Mr. Nish and Twinkle Beds, and Mr. Hall later told Mr. Hunter that he was a Twinkle Beds investor and principal. Twinkle Beds was using business strategies that resembled the Sharetown strategies that Mr. Hall helped develop, and it was also soliciting Sharetown sales representatives for employment. Sharetown later learned that Mr. Hall had conducted business for Twinkle Beds at a Las Vegas trade show where he purported to be representing Sharetown.

In late 2021, Sharetown filed suit against Mr. Hall, alleging breach of fiduciary duty, breach of contract, and misappropriation of trade secrets. Now Mr. Hall asks the court to dismiss the trade secrets claim under Rule 12(b)(6).

/ / /

/ / /

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." VDARE Found. v. City of Colo. Springs, 11 F.4th 1151, 1158 (10th Cir. 2021) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A claim is facially plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Renfro v. Champion Petfoods USA, Inc., 25 F.4th 1293, 1300 (10th Cir. 2022) (quoting Iqbal, 556 U.S. at 678).  Looking at the complaint, the court must accept "all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  Id. (quoting Albers v. Bd. of Cnty. Comm'rs, 771 F.3d 697, 700 (10th Cir. 2014)).  The court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." VDARE Found., 11 F.4th at 1158 (quoting Dubbs v. Head Start, Inc., 336 F.3d 1194, 1201 (10th Cir. 2003)).

## ANALYSIS

Sharetown's complaint asserts three causes of action.  Only one is at issue here: Mr. Hall's alleged misappropriation of trade secrets in violation of the Utah Uniform Trade Secrets Act (UUTSA), Utah Code Ann. § 13-24-1 et seq.  As the name suggests, a misappropriation of trade secrets claim requires "a protectable 'trade secret' of a plaintiff and . . . 'misappropriation' by a defendant."  InnoSys, Inc. v. Mercer, 2015 UT 80, ¶ 24, 364 P.3d 1013, 1018.  The parties separate this claim into three elements: "(1) the existence of a trade secret, (2) communication of the trade secret to [the defendant] under an express or implied agreement limiting disclosure of

the secret, and (3) [the defendant]'s use of the secret that injures [the plaintiff]." USA Power, LLC v. PacifiCorp (USA Power II), 2016 UT 20, ¶ 44, 372 P.3d 629, 648 (quoting USA Power, LLC v. PacifiCorp (USA Power I), 2010 UT 31, ¶ 39, 235 P.3d 749, 758).

Mr. Hall argues that Sharetown fails at step one. In his view, the complaint does not adequately allege that Sharetown held protectable trade secrets.[2] There are two related issues here. First, the parties disagree about which trade secrets the complaint alleges. Second, they disagree about whether UUTSA would consider those items to be trade secrets. The court will address these issues in turn.

### I.      What trade secrets does the complaint allege?

Sharetown's complaint appears to allege that two trade secrets were misappropriated: Sharetown's "new business model" that used a "proprietary approach to providing reverse logistics services to brand retailers and selling and reselling mattresses and furniture to end users," and a list of "the names, contact information, and other information related to Sharetown's independent contractor sales force." (Compl. ¶¶ 10–11, 16, ECF No. 2.) It confirms these two items in its opposition memorandum. (Opp'n to Mot. at 5, ECF No. 11.)

In his reply memorandum, Mr. Hall contends that the complaint "does not allege that a 'compilation' of sales representatives constitutes a trade secret." (Reply at 3, ECF No. 14.) The court disagrees. Perhaps it would be more appropriate to describe the compilation of sales representatives as a subset of the business model/proprietary approach trade secret. Sharetown alleges that Mr. Hall began "recruiting and training independent contractor sales representatives"

---

[2] Mr. Hall also briefly argues that Sharetown did not adequately plead misappropriation. (See Mot. to Dismiss at 5, ECF No. 6 ("Sharetown does not allege any facts to support a claim for the existence of a trade secret, let alone one that Hall supposedly misappropriated." (emphasis added)).) But Mr. Hall provides zero support for this conclusion. He clearly focuses his attention on combating the existence of a trade secret. The court considers any argument about misappropriation waived "because it [was] raised in a perfunctory manner." In re Molycorp, Inc. Sec. Litig., 157 F. Supp. 3d 987, 1003 n.10 (D. Colo. 2016) (citing In re Taylor, 737 F.3d 670, 682 n.9 (10th Cir. 2013)).

4

as part of "the new business model." (Compl. ¶ 15.) These sales representatives "provided reverse logistics services and sold mattresses for Sharetown." (Id.) And as part of his job, Mr. Hall "had access" to a list of these sales representatives. (Id. ¶ 16.) In other words, this compilation of sales representatives was a component of the new business model.

Sharetown also alleges that "Twinkle [Beds] was soliciting Sharetown's sales representatives to work for Twinkle [Beds]." (Id. ¶ 29.) Although the complaint does not explicitly claim that Mr. Hall misappropriated the compilation of sales representatives by somehow leaking it to Twinkle Beds, the court must "construe [all well-pleaded allegations] in the light most favorable to the plaintiff." Renfro, 25 F.4th at 1300 (quoting Albers, 771 F.3d at 700). The clear implication of Mr. Hall's having access to the compilation of sales representatives and Twinkle Beds' soliciting those sales representatives is Mr. Hall's suspected misappropriation. The court finds that Sharetown has alleged that the compilation of sales representatives is a trade secret.

II.     **Are Sharetown's alleged trade secrets plausible?**

Now the court must decide whether the two alleged trade secrets fall within UUTSA's scope. Under UUTSA, a trade secret is

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Utah Code Ann. § 13-24-2(4). "What constitutes a trade secret is a question of fact." Gatti v. Granger Med. Clinic, P.C., 529 F. Supp. 3d 1242, 1264 (D. Utah 2021) (quoting CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC, 2012 UT App 60, ¶ 13, 274 P.3d 317,

323). "The burden of demonstrating the existence of a trade secret is on the [plaintiff], and there is no presumption in his or her favor." Id. (quoting CDC Restoration, 2012 UT App 60, ¶ 13, 274 P.3d at 323).

Again, Sharetown alleges two trade secrets: (1) its "new business model" that used a "proprietary approach to providing reverse logistics services to brand retailers and selling and reselling mattresses and furniture to end users," and (2) a list of "the names, contact information, and other information related to Sharetown's independent contractor sales force." (Compl. ¶¶ 10–11, 16, ECF No. 2.) Under UUTSA, both are plausible trade secrets. The business model is a "method, technique, or process," and the list of names and contact information is a "compilation." Utah Code Ann. § 13-24-2(4). It is plausible that both items "derive[] independent economic value" by not being generally known or readily ascertainable, § 13-24-2(4)(a), especially because Sharetown alleges that its business model was "innovative," "novel," and "involved a proprietary approach." (Compl. ¶ 11, ECF No. 2.) And in the context of Sharetown's entire business, these two items likely fall under the Proprietary Information and Inventions Agreement that Mr. Hall signed, meaning that they are the "subject of [reasonable] efforts" to "maintain [their] secrecy." § 13-24-2(4)(b). Solely based on the allegations and the reasonable inferences drawn in Sharetown's favor, the business model and contact list are plausibly alleged to be trade secrets.

Mr. Hall claims that Sharetown's two trade secrets are not precisely defined. In support, he cites five cases where trade secrets claims were dismissed for lack of particularity. Citing Chief Judge Robert J. Shelby's recent decision in Surgenex, LLC v. Predictive Therapeutics, LLC, 462 F. Supp. 3d 1160 (D. Utah 2020), Sharetown contends that Mr. Hall's cases are inapposite because there is no particularity requirement in UUTSA. The court agrees. UUTSA

has no particularity requirement, and the Utah Supreme Court "put this question to rest" in USA Power II. Surgenex, 462 F. Supp. 3d at 1171 (citing USA Power II, 2016 UT 20, ¶ 48, 372 P.3d at 649 & n.44). Besides being textually accurate, the Utah Supreme Court's conclusion comports with common sense. As Sharetown notes, it "could not include more detailed information about its trade secrets in a public court filing without undermining the protection of those secrets." (Opp'n at 8 n.2, ECF No. 11.)

"Considering the context provided in the Complaint and the history between the parties," all Sharetown must do is "provide[] sufficient detail to put [Mr. Hall] on notice of the trade secrets at the pleading stage." Surgenex, 462 F. Supp. 3d at 1171. And Sharetown does this in its complaint. These trade secrets are not random; Mr. Hall was directly involved with developing Sharetown's proprietary business model and overseeing Sharetown's independent contractor sales force. (Compl. ¶¶ 10, 15–16, 28–29, ECF No. 2.) Mr. Hall is surely on notice about his alleged misconduct based on the complaint and the "history between the parties." Surgenex, 462 F. Supp. 3d at 1171. "[F]urther specificity" about these alleged trade secrets will come during discovery. Id. at 1172. For now, Sharetown's complaint "allows the court to draw the reasonable inference that [Mr. Hall] is liable for the misconduct alleged." Renfro, 25 F.4th at 1300 (quoting Iqbal, 556 U.S. at 678).

## CONCLUSION

Sharetown has plausibly alleged that Mr. Hall misappropriated its trade secrets. Accordingly, Mr. Hall's motion to dismiss (ECF No. 6) is DENIED.

/ / /

/ / /

/ / /

DATED this 5th day of April, 2022.

                                              BY THE COURT:

                                              *Tena Campbell*

                                              TENA CAMPBELL
                                              United States District Judge